## Brodt et ux. v. Price

*Erdman & Williams*, for plaintiffs; *Frank B. Holmes*, for defendant.

SHULL, P. J., October 30, 1933.—While we agree with counsel for defendant that under all *ordinary* conditions the Act of May 18, 1933, P. L. 826, which provides as follows:

"When used in this act . . .

" 'Real property' shall mean any dwelling, together with the land appurtenant thereto, and any farm occupied by an owner of such dwelling or farm as a residence.

"Section 2. Every court of common pleas of this Commonwealth shall have authority, under the conditions hereinafter set forth, to stay any writ of execution from time to time and for such periods as the court, in its discretion, may deem proper. Such stays shall be allowed only upon application of an owner, lienholder, or any other person in interest. . . .

"Section 3. In exercising the powers conferred by this act, a court shall have the discretion of a chancellor sitting in equity",
might be unconstitutional, still in the face of a recognized emergency which direly threatens the well being of the masses of our people, if not the very life of our Nation, which existed at the time of the passing of this act by our legislature and which does, though to a much lesser degree, still exist, heroic measures were necessary as a matter of public policy.

In the past, moratoria have been declared by the Nation and by the States, and every of these impaired the obligations of contracts if such obligations are under all and any conditions to be measured by the standard of normal conditions.

Within the year, our President declared a moratorium for the banks, because of emergency and that we might not all become bankrupt at one fell swoop—the States coöperated and the people of the Nation cheerfully coöperated, with little or no complaint. The act here in question is a part of the entire plan, National and State, to save the masses of our people from undue hardship and bankruptcy and the loss of their homes. This act deals only with the home. For our legislature and our executives to have sat idly by and to have permitted the promiscuous sale of homes and farms of our people at a time when world depression has brought about general unemployment, with the result that most of those who work could scarcely earn even a meagre livelihood; when prices for farm products were so low that the farmer was hard pressed to eke out a bare existence; when there was no prospect that worker or farmer could pay from his earnings or income a single dollar on existing debts; when there was no prospect that any home or farm sold at forced sale would bring more than a small fraction of its normal value (though such sales would leave homeless a vast number of our people), would have been little short of criminal.

This act is in its nature a moratorium—not general, but a moratorium for those home owners and farm owners who may appear before the court and show facts which merit for them an extension of time.

It has always been true that should the enforcement of a right or a contract become so grossly inequitable that unconscionable or undue injury would result, the courts of equity have power to give relief, and such relief has never been construed as impairing the obligation of a contract, though that might appear to be the case in the face of the technical terms of the contract. So also has it always been true that, in the eyes of the law, a contract contrary to public policy is not recognized and cannot be enforced. Public policy is a changing thing. Public policy as applied to normal conditions may be one thing but when applied to emergency conditions be quite another, and certainly this is true of that part of the contract before us which waives stay of execution on a judgment against a home or a farm occupied by the owner, and the criterion that public policy has so changed is the passing of the Home Loan Act and the Farm Loan Act by the Congress of the United States and the passing of this act by our own legislature.

That an act of assembly may impair the obligation of a contract which is against public policy does not bring that act in conflict with article I, section 10, of the Constitution which prohibits legislation impairing the obligation of existing contracts.

It is not our thought that all things we have said in discussing and determining this question apply to the case before us, but we do feel that they are pertinent to the question of the constitutionality of this act.

For the reasons above stated, we hold that the Act of May 18, 1933, P. L. 826, is within the spirit of the Constitution and is therefore constitutional. As the petitioner before us falls within the provisions of the act, this rule should be made absolute.

And now, October 30, 1933, rule made absolute and execution stayed in the manner provided by the Act of May 18, 1933, P. L. 826, until the first Monday of January 1934.

From C. C. Shull, Stroudsburg, Pa.